1 | Robert L. Sallander Jr. (SBN 118352)   **SEALED**
*rsallander@gpsllp.com*
2 | Kyle G. Kunst (SBN 279000)   **BY COURT ORDER**
*kkunst@gpsllp.com*
3 | **GREENAN, PEFFER, SALLANDER & LALLY LLP**
6111 Bollinger Canyon Road, Suite 500   **FILED**
4 | San Ramon, California 94583
Telephone:   925-866-1000   APR 2 6 2013
5 | Facsimile:   925-830-8787

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
6 | Attorneys for Plaintiff   NORTHERN DISTRICT OF CALIFORNIA
PAMELA KELLY f/k/a Pamela K. Lindersmith   OAKLAND

7 |

8 | UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 |

11 | UNITED STATES ex rel. PAMELA KELLY )   Case No. **C13-1924**
f/k/a Pamela K. Lindersmith; PAMELA )
12 | KELLY f/k/a Pamela K. Lindersmith, an )   **COMPLAINT**
individual, )
13 | )   **Causes of Action:**
Plaintiffs, )
14 | )   1. **Violation of the False Claims Act,**
)      **31 USC § 3729 et seq.**
15 | vs. )   2. **Retaliation in Violation of the False**
)      **Claims Act, 31 USC § 3730**
16 | JOHN MUIR HEALTH, a corporation, BAY )   3. **Retaliation in Violation of**
AREA THERAPEUTIC RADIOLOGY & )      **California Labor Code § 1102.5**
17 | ONCOLOGY ASSOCIATES MEDICAL )   4. **Wrongful Termination in Violation**
GROUP, INC., a corporation, and DOES 1-25, )      **of Public Policy Embodied in the**
18 | )      **False Claims Act, 31 USC § 3729 et**
Defendants. )      **seq.**
19 | )   5. **Wrongful Termination in Violation**
)      **of Public Policy Embodied in**
20 | )      **California Labor Code § 1102.5.**
)   6. **Intentional Interference with**
21 | )      **Prospective Economic Advantage.**
)   7. **Negligent Interference with**
22 | )      **Prospective Economic Advantage**
)
23 | )   **DEMAND FOR JURY TRIAL**
)
24 |

25 |

26 |

27 |

28 |

Greenan,
Peffer,
Sallander &
Lally LLP

1

COMPLAINT                                                                                          CASE NO.

1                                    **PARTIES**

2       1.       Plaintiff-Relator Pamela Kelly f/k/a Pamela K. Lindersmith (hereinafter

3 "Relator") brings this action on behalf of herself for retaliation and wrongful employment

4 termination pursuant to 31 USC § 3730(h), California Labor Code § 1102.5 and the common law

5 torts of wrongful termination in violation of public policy, intentional interference with

6 prospective advantage, and negligent interference with prospective economic advantage, and on

7 behalf of the United States to recover damages and civil penalties arising from the Defendants'

8 actions which violate the False Claims Act, 31 U.S.C. § 3729 *et seq.*

9       2.       Relator is an individual and former employee of John Muir Health ("JMH"), who

10 at all times relevant to this Complaint, resided in Contra Costa County, California. JMH

11 terminated Relator's employment and failed and refused to reinstate, rehire or consider her for

12 other available positions for which Relator is qualified in retaliation for Relator's attempts to

13 stop JMH from presenting false claims for payment to the United States Government. Relator's

14 conduct constitutes activity protected by Federal and California law. Relator has suffered injury

15 in fact from that retaliation, termination, and failure to reinstate, including lost wages, lost

16 earning capacity and severe emotional distress with physical manifestations.

17       3.       Defendant JMH is a hospital and corporation with its principal place of business

18 in Contra Costa County, California.

19       4.       Defendant Bay Area Therapeutic Radiology & Oncology Associates Medical

20 Group, Inc. ("BATROA") is a corporation with its principal place of business in Contra Costa

21 County, California. BATROA conspired with JMH regarding the billing practices at issue and to

22 retaliate against Relator for her protected activities.

23       5.       Relator also names Does 1-25 as Defendants in this action, whose names and

24 roles in this action have not presently been ascertained. At all times relevant herein, these Doe

25 Defendants, along with JMH, BATROA, and their employees, agents, alter-egos, subsidiaries,

26 affiliates, and other related entities, were the agents, servants, alter-egos and employees of each

27 other, and at all times relevant herein, each was acting within the purpose and scope of that

28 agency and employment.

Greenan,
Peffer,
Sallander &
Lally LLP

2

COMPLAINT                                                        CASE NO.

1    6.    Whenever reference in this Complaint is made to any act or transaction of any

2 Defendant, such allegation shall also include the principals, officers, directors, employees, agents

3 and representatives of that Defendant, who committed, knew of, performed, authorized, ratified

4 and directed such acts or transaction on behalf of the Defendant while actively engaged in the

5 scope of their duties.

6                                  **JURISDICTION AND VENUE**

7    7.    Jurisdiction over this action is vested in this Court through 31 USC § 3732(a), 31

8 USC § 3730(h)(2), 28 USC § 1331, and 28 USC § 1367(a).

9    8.    The Defendants conduct and transact substantial business, and may be found in,

10 this District, the Plaintiff is a resident of this District, and the acts and/or omissions which form

11 the basis for all causes of action occurred in this District.

12    9.    Venue is proper in this District under 31 USC § 3732(a).

13                         **MEDICARE CONDITIONS OF PAYMENT**

14    10.    The United States Government, through the Center for Medicare and Medicaid

15 Services ("CMS"), which is part of the United States Department of Health and Human Services,

16 reimburses JMH and BATROA for the costs of therapy that JMH and BATROA provide to

17 patients who are enrolled in Medicare. Medicare provides reimbursement when the therapy is

18 deemed medically necessary and otherwise satisfies the conditions for payment set forth by

19 Medicare.

20    11.    Medicare considers radiation therapy medically necessary only if, among other

21 things, such procedures take place "under direct supervision [or other level of supervision as

22 specified by CMS for the particular service] of a physician or a nonphysician practitioner"

23 pursuant to 42 CFR § 410.27(a)(1)(iv). When such a service takes place in the hospital, such as

24 the radiation therapy provided by JMH and BATROA at issue in this Compliant, to meet the

25 direct supervision requirement a "physician or nonphysician practitioner must be immediately

26 available to furnish assistance and direction throughout the performance of the procedure." 42

27 CFR § 410.27(a)(1)(iv)(A). This condition of payment is known as, and is herein referred to, as

28 the "supervision requirements." A radiation therapy procedure which fails to meet the

Greenan,
Peffer,
Sallander &
Lally LLP

3

COMPLAINT                                            CASE NO.

1   supervision requirements is not reimbursable through Medicare.

2                           **RADIATION THERAPY AT JMH**

3         12.     JMH maintains two campuses in Contra Costa County, California, which are

4   relevant to this matter; one campus in Walnut Creek, California, and one campus in Concord,

5   California. At each of those campuses, JMH provides radiation therapy services to its patients.

6   Patients that undergo radiation therapy at JMH typically receive such radiation therapy daily for

7   a span of several weeks. Relator estimates that JMH provides 80 to 130 radiation therapy

8   procedures per weekday at both of its campuses. The procedures could begin as early as 6:00

9   a.m. and end as late as 9:00 p.m. A large number of patients receiving radiation therapy from

10   JMH are Medicare recipients.

11         13.     JMH contracted with BATROA and its physicians, Dr. Richard J. Carmel, Dr.

12   Daniel Chinn, Dr. Vincent Massullo, Dr. Michael Levine, and Dr. Marjeneh Moini, to provide

13   radiation therapy at JMH's Walnut Creek and Concord campuses.

14         14.     When BATROA performed radiation therapy on a Medicare patient at a JMH

15   campus, BATROA would be reimbursed by Medicare for the professional service component,

16   i.e., the expertise, of providing the therapy, and JMH would be reimbursed by Medicare for the

17   technical component, i.e., the facility, staff (other than physicians) and hardware, of providing

18   the therapy.

19         15.     The BATROA physicians were often not physically present at the campus where

20   radiation therapy was occurring. Those physicians were absent mostly for the procedures which

21   occurred early and late in the day. Those physicians were also frequently absent during midday

22   procedures. During those times of the day, no BATROA physician, or any other nonphysician

23   practitioner, was physically present on the campus where the procedure was performed. The

24   BATROA physicians therefore often failed to meet the supervision requirements, because they

25   often were not immediately available during radiation therapy procedures.

26         16.     Because neither a BATROA physician nor other qualified nonphysician

27   practitioner was immediately available for procedures as required by Medicare, those procedures

28   did not meet the conditions for Medicare payment. Nevertheless, both JMH and BATROA

Greenan,
Peffer,
Sallander &
Lally LLP

COMPLAINT                                              CASE NO.

1   sought Medicare payments for the procedures as if they met the conditions for payment.

2                              **ALLEGATION OF RETALIATION**

3          17.    Relator began her career as a radiation therapist in 1986. In 1997, JMH hired
4   Relator as a per diem radiation therapist. In 1998, JMH promoted Relator to full-time radiation
5   therapist at JMH's Concord campus. In 2000, JMH promoted Relator to Chief Therapist of
6   JMH's Walnut Creek campus. In 2007, JMH promoted Relator to Manager of the Neuro-
7   Oncology Program at both campuses. In 2008, JMH promoted Relator to Manager of JMH's
8   Walnut Creek Radiation Oncology Department, with continuing management responsibilities
9   over the Neuro-Oncology Program at both campuses.

10         18.    In or around December 2009, as part of her duties at as Manager of JMH's
11  Walnut Creek Radiation Oncology Department Relator attended a conference on Medicare
12  billing for radiation oncology procedures in which the supervision requirements were discussed.
13  After the conference, Relator discussed the supervision requirements with the BATROA
14  physicians and JMH personnel and informed them of their obligation to comply with the
15  supervision requirements as a condition of payment by Medicare. At that time, Relator notified
16  JMH and BATROA that many of the procedures were performed without complying with the
17  supervision requirements and therefore did not satisfy the Medicare conditions for payment.
18  Relator encouraged JMH and BATROA to ensure that they were billing Medicare for only those
19  procedures that met the conditions of payment.

20         19.    After informing BATROA and JMH of the supervision requirements, Relator
21  discovered that JMH and BATROA continued to seek payment from Medicare for procedures
22  that did not meet the supervision requirements or the conditions for payment and disclosed her
23  discovery to JMH and BATROA.

24         20.    In or around late April or early May of 2012, Relator attended a meeting with her
25  supervisor, Don Colombana, BATROA physicians, and William Bice, then-Chief Physicist at
26  JMH's Walnut Creek campus at which the supervision requirements and the Medicare conditions
27  for payment were discussed. The BATROA physicians disagreed that they were required to be
28  physically present at the location where the radiation oncology procedures were performed to

Greenan,
Peffer,
Sallander &                                    5
Lally LLP      COMPLAINT                                                         CASE NO.

1 | satisfy the supervision requirements. Colombana and Relator therefore requested guidance from

2 | JMH's Compliance Department. Approximately two days after the meeting described above,

3 | Levine approached Colombana and expressed concern that Relator would report the doctors to

4 | Medicare.

5 |     21.    On June 8, 2012, Relator received an employment review for her performance at

6 | JMH. In that review, Relator was described as "Competent" in "Interpersonal/Communications"

7 | skills who demonstrated the following "Behaviors":

8 |        • Treats staff, patients, medical staff, peers, management team and others

9 |          with mutual respect.

10 |        • Speaks effectively in groups and one-on-one exchanges.

11 |        • Tailors message to audience.

12 |        • Balances group interests with organizational interests.

13 |        • Encourages open exchange of ideas and opinions.

14 |        • Listens to the comments and questions of others.

15 |        • Informs people of decisions and relevant information.

16 |        • Provides constructive feedback.

17 |        • Develops cooperative working relationships.

18 |        • Displays trust and mutual understanding.

19 |        • Handles sensitive situations with confidence.

20 |        • Fosters collaboration.

21 |        • Builds consensus.

22 |        • Remains visible, available, calm and objective.

23 |        • Composes formal and informal documents, letters, reports, presentations

24 |          and Emails messages.

25 |        • Uses technology, (e.g., computer software programs- Word, Excel, etc.) to

26 |          communicate messages.

27 |     22.    On or about June 18, 2012, JMH replaced Colombana with Bice. Both prior to

28 | and during his tenure as Director of Radiation Oncology, Bice had the ability to set corporate

1 | policy.

2 | 23. On or about June 19, 2012, Bice reported to Relator that her position was being
3 | terminated immediately because a new cross-campus position was being formed. Bice informed
4 | Relator she would not be considered for the new position because she had "long standing issues
5 | with ...communication and coordination problems with the physician's [sic] and employee's
6 | [sic] on the Concord campus..." Bice's explanation was pretextual and intended to cover up the
7 | real reason for Relator's employment termination; namely her protected conduct of attempting to
8 | enforce Medicare supervision and billing requirements.

9 | 24. On or about June 20, 2012, Relator attended a meeting with Ms. Karen Mamuyac,
10 | JMH's Director of Human Resources. Relator informed Mamuyac that she believed her
11 | termination was in retaliation for discussing the BATROA physicians' lack of compliance with
12 | the supervision requirements.

13 | 25. On or about July 3, 2012, Relator applied for two positions at JMH; a risk-
14 | manager position and the new cross-campus position. Relator was informed shortly thereafter
15 | she would not be considered for the risk-manager position, but was given no indication that she
16 | would not be reconsidered for the new cross-campus position. Relator only learned she was not
17 | being rehired for that position in or around mid-September, 2012, when she learned that position
18 | had been filled.

19 | 26. Relator has exhausted or is excused from exhausting, her administrative remedies
20 | prior to filing this action.

21 | **FIRST CAUSE OF ACTION**

22 | *(Violation of 31 § USC 3729 et seq.– Against All Defendants)*

23 | 27. Relator re-alleges the above paragraphs as though set forth below.

24 | 28. The Defendants knowingly presented or caused to be presented false claims for
25 | payment or approval to the United States Government, and continued to do so after they had
26 | been informed such a practice was unlawful.

27 | 29. The Defendants knowingly made, used, or caused to be made or used, false
28 | records or statements material to false or fraudulent claims, and to get false or fraudulent claims

Greenan,
Peffer,
Sallander &
Lally LLP

7

1  paid or approved by the United States Government, and continued to do so after they had been
2  informed such a practice was unlawful.

3      30.   The Defendants conspired to commit the above acts to defraud the United States
4  for profit by getting false or fraudulent claims allowed or paid by the United States Government
5  and continued to do so after they had been informed such a practice was unlawful.

6      31.   As a result of the Defendants' violations of 31 USC § 3729 *et seq.*, the United
7  States has suffered damages in an amount to be determined at trial.

8      **WHEREFORE**, Relator prays for relief as set forth below;

9                          **SECOND CAUSE OF ACTION**

10              *(Retaliation in Violation of 31 § USC 3730(h) – Against JMH)*

11      32.   Relator re-alleges the above paragraphs as though set forth below.

12      33.   Relator engaged in protected activity in investigating and in furtherance of efforts
13  to stop one or more violations of the Federal False Claims Act, 31 USC § 3729 *et seq.*

14      34.   JMH knew of Relator's protected activity and terminated Relator because of that
15  activity. JMH thereafter refused to reinstate or rehire Relator.

16      35.   As a result of JMH's actions, Relator has suffered damages in an amount to be
17  determined at trial.

18      **WHEREFORE**, Relator prays for relief as set forth below;

19                          **THIRD CAUSE OF ACTION**

20              *(Retaliation under California Labor Code § 1102.5 – Against JMH)*

21      36.   Relator re-alleges the above paragraphs as though set forth below.

22      37.   Relator engaged in protected activity in refusing to participate in an activity that
23  would violate the Federal False Claims Act, 31 USC § 3729 *et seq.*

24      38.   JMH knew of Relator's protected activity and terminated Relator because of that
25  activity. JMH thereafter refused to reinstate or rehire Relator.

26      39.   As a result of JMH's actions, Relator has suffered damages in an amount to be
27  determined at trial.

28  / / /

Greenan,
Peffer,
Sallander &
Lally LLP

8

COMPLAINT                                                                    CASE NO.

1  **WHEREFORE**, Relator prays for relief as set forth below;

2  **FOURTH CAUSE OF ACTION**

3  *(Wrongful Termination in Violation of the Public Policy Embodied in 31 USC § 3730(h)–*

4  *Against JMH)*

5  40.  Relator re-alleges the above paragraphs as though set forth below.

6  41.  Relator engaged in protected activity in refusing to participate in an activity that

7  would violate the Federal False Claims Act, 31 USC § 3729 *et seq*.

8  42.  JMH knew of Relator's protected activity and terminated Relator because of that

9  activity.

10  43.  JMH's termination of Relator violated the fundamental public policy of opposing

11  unlawful activity of an employer embodied in the Federal False Claims Act, 31 USC § 3729 *et*

12  *seq*.

13  44.  Bice is a managing agent of JMH and carried out Relator's termination to retaliate

14  and punish Relator for her opposition to JMH's unlawful conduct. Bice acted with malice,

15  oppression, and fraud in terminating Relator.

16  45.  JMH learned of and ratified Bice's conduct after it occurred, and did not rehire or

17  reinstate Relator. JMH is therefore liable as Bice's principal, and is liable to Relator for punitive

18  damages.

19  46.  As a result of JMH's actions, Relator has suffered damages in an amount to be

20  determined at trial.

21  **FIFTH CAUSE OF ACTION**

22  *(Wrongful Termination in Violation of the Public Policy Embodied in California Labor*

23  *Code § 1102.5– Against JMH)*

24  47.  Relator re-alleges the above paragraphs as though set forth below.

25  48.  Relator engaged in protected activity in refusing to participate in an activity that

26  would violate the Federal False Claims Act, 31 USC § 3729 *et seq*.

27  49.  JMH knew of Relator's protected activity and terminated Relator because of that

28  activity.

Greenan,
Peffer,
Sallander &
Lally LLP

9

COMPLAINT                                    CASE NO.

50.     JMH's termination of Relator violated the fundamental public policy of opposing unlawful activity of an employer embodied in California Labor Code § 1102.5.

51.     Bice is a managing agent of JMH and carried out Relator's termination to retaliate and punish Relator for her opposition to JMH's unlawful conduct. Bice acted with malice, oppression, and fraud in terminating Relator.

52.     JMH learned of and ratified Bice's conduct after it occurred, and did not rehire or reinstate Relator. JMH is therefore liable as Bice's principal, and is liable to Relator for punitive damages.

53.     As a result of JMH's actions, Relator has suffered damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

*(Intentional Interference with Prospective Economic Advantage – Against BATROA)*

54.     Relator re-alleges the above paragraphs as though set forth below.

55.     Relator maintained an employment relationship with JMH which was economically beneficial to her, in that it provided her wages and benefits, among other things, and that relationship would continue to provide Relator with economic benefits had it continued.

56.     BATROA was aware that Relator maintained an economic relationship with JMH.

57.     BATROA engaged in intentional acts which were meant to and did interrupt Relator's economic relationship with JMH, and the intentional acts of BATROA were a proximate cause of Relator's termination by JMH.

58.     BATROA engaged in the intentional acts in furtherance of its billing practices perpetrated on the United States, and in doing so, acted with malice, oppression, and fraud, and is therefore liable to Relator for punitive damages.

59.     Relator's termination by JMH has caused Relator economic harm in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION

*(Negligent Interference with Prospective Economic Advantage – Against BATROA)*

Greenan,
Peffer,
Sallander &
Lally LLP

10

COMPLAINT                                                                                      CASE NO.

60. Relator re-alleges the above paragraphs as though set forth below.

61. Relator maintained an employment relationship with JMH which was economically beneficial to her, in that it provided her wages and benefits, among other things, and that relationship would continue to provide Relator with economic benefits had it continued.

62. BATROA was aware that Relator maintained an economic relationship with JMH.

63. BATROA engaged in conduct which was negligent and wrongful, although it was foreseeable if BATROA did not exercise due care, BATROA's wrongful conduct would interfere with Relator's economic relationship with JMH

64. BATROA's failed to exercise due care and as a result, caused the disruption of Relator's economic relationship with JMH. Relator was injured in an amount to be proven at trial.

**WHEREFORE**, Relator prays for relief on behalf of the United States and herself against all Defendants as follows:

(a) For compensatory damages;

(b) For lost wages, loss of benefits, and loss of future earning capacity;

(c) For medical expenses;

(d) For treble damages under the False Claims Act;

(e) For civil penalties under the False Claims Act;

(f) For punitive damages;

(g) For reasonable attorneys' fees Relator has and will incur in bringing and maintaining this action;

(h) For all costs, expenses and fees Relator has and will incur in bringing and maintaining this action;

(i) Prejudgment interest; and

(j) Such other relief as the Court finds appropriate.

///

///

Greenan,
Peffer,
Sallander &
Lally LLP

11

1    Dated: April 26, 2013

2                       **GREENAN, PEFFER, SALLANDER & LALLY LLP**

3

4

5

6                    Robert L. Sallander, Jr.
                     6111 Bollinger Canyon Road, Suite 500
                     San Ramon, CA 94583

7                    rsallander@gpsllp.com
                     (925) 866-1000

8

9

10                      **DEMAND FOR JURY TRIAL**

11        Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

12    Civil Procedure.

13

14

15                    Robert L. Sallander, Jr.
                     Attorneys for Plaintiff
                     Pamela Kelly

16

17

18

19

20

21

22

23

24

25

26

27

28

Greenan,
Peffer,
Sallander &
Lally LLP

COMPLAINT                                                         CASE NO.